### 16676

STATE v. WILLIAMS

(72 S. E. (2d) 830)

*Mr. L. A. Hutson,* of Orangeburg, *for Appellant,*

*Mr. Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondent,*

October 27, 1952.

OXNER, Justice.

Appellant, a white man about 24 years of age, killed his father on October 23, 1951. He claims that he did so in defense of himself and his mother. The jury returned a verdict of guilty of manslaughter and the Court imposed a sentence of six years. On this appeal, he contends that the trial judge should have directed a verdict of not guilty upon the ground that the undisputed facts established his plea of

self-defense. Errors are also assigned in the admission of testimony.

The deceased, who was about seventy years of age, and his wife lived in a house owned by her in the town of Neeses in Orangeburg County. They operated a small farm. There were a number of children but none lived with their parents except appellant who lived in the home with his wife and baby. Various members of the family testified that for a long number of years deceased had been a heavy drinker and when intoxicated abused and whipped his wife and threatened to kill her and the children. They said that during the last few months of his life, he got drunk once or twice a week, but conceded that although he kept a gun at the house, he never shot any one and when sober, was kind and peaceful.

Late in the afternoon on the day preceding the homicide, appellant and his father left the house in a truck to go hunting. Each had a shotgun. After hunting a short while, they went to a filling station and drank some beer. From there they went to the town of Springfield to see a carnival, but found that it had closed for the day. They then went to a cafe and drank more beer and ate hamburgers. The deceased expressed a desire to go to Orangeburg to see his daughter and on the way, they stopped at a filling station where he drank several more bottles of beer. After stopping at the home of his daughter for a few minutes, they proceeded to a drive-in restaurant where more beer was consumed and they ate supper. They left this place about 2 o'clock and arrived home about 4 o'clock in the morning. Appellant claims that by this time his father was thoroughly intoxicated, but that he was not.

Although it appears that there had been no trouble whatsoever between father and son while riding around, appellant testified that his father got out of the truck immediately upon arriving home and went into the house where he commenced cursing and threatening to kill his wife; that his mother tried to get him to go to bed, but he refused to do

so; that he then sought to aid his mother in quieting his father but the latter became more furious and threatened to kill both of them; and that finally, believing that his father had taken a shotgun into the house and was going to kill him and his mother, he went into the yard, got a gun from the truck, and shot his father who was standing inside the screen door of the kitchen about 25 feet away. The concentrated portion of the load struck the deceased just above the left eye. Death was almost instantaneous. Appellant said that when he shot, it was too dark to get a clear view of his father since the only light in the house was in the dining room, but that his father appeared to have something in his hand.

The mother of appellant corroborated his testimony as to the behavior of the deceased upon entering the house. She testified that after her husband stated he was going to kill her and began hunting for a gun, she picked up a shotgun which was lying on a table and had carried it out of the house when her husband was shot.

Appellant's wife testified that she was asleep when the deceased entered the house, but was awakened by his cursing and threats. She said that she immediately jumped out of bed and ran into the hall with her baby, and that just before she got to the door leading into the porch, the gun fired.

It seems to be undisputed that deceased had no gun when he was shot. Appellant's mother says that she took the gun with her when she left the house but it is contended that appellant was unaware of this fact and was justified in believing that his father had a gun and was going to kill him and his mother. Although all of the eyewitnesses testified for the defense, the State offered testimony to the effect that there never was any gun in the house on the night of the homicide. We think the evidence as a whole reasonably warrants the inference that there was no necessity, real or apparent, for appellant to kill his father,

and that the issue of self defense was properly submitted to the jury.

The foregoing discussion disposes of Exceptions 1 and 2. Exception 3 is to the effect that certain testimony by one of the officers as to a statement made to him by appellant's wife "should not be accepted as true and valid testimony against the defendant" because such statement was contrary to other testimony in the case and was not made in writing. This exception is wholly without merit. The credibility of this testimony was for the jury.

By Exception 4 it is contended that the Court erred in permitting the solicitor to ask appellant on cross examination the following question: "As a matter of fact, wasn't your father lecturing you about a certain trip you made that night?" There was no objection to this question and it was answered in the negative by appellant. Apart from this, it was permissible for the solicitor to cross examine appellant as to any provocation for the quarrel which arose when the deceased returned home.

The remaining exceptions are to the effect that the Court erred in permitting one of the investigating officers to testify in reply as to a certain statement made to him by appellant's wife shortly after the homicide. Appellant's wife was asked on cross examination about this statement and denied making it. The testimony in controversy was admissible for the purpose of contradicting her.

All exceptions are overruled and the judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.